## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **CARL V. COLEMAN,** | § | |
| | § | |
| **V.** | § | **A-14-CV-1015-LY** |
| | § | |
| **THE UNITED STATES, et al.** | § | |

## ORDER ON *IN FORMA PAUPERIS* STATUS AND
## REPORT AND RECOMMENDATION ON THE MERITS OF THE CLAIMS

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Application to Proceed *In Forma Pauperis* filed November 10, 2014 (Dkt. No. 2) and Request for Appointment of Counsel (Dkt. No. 3). Also before the Court is Coleman's First Amended Complaint (Dkt. No. 4). The District Court referred the above motions to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. IFP Status

After considering Plaintiff's financial affidavit, the Court finds that Plaintiff is indigent. Accordingly, the Court HEREBY GRANTS Plaintiff *in forma pauperis* status (Clerk's Doc. No. 2) and ORDERS his Complaint be filed without pre-payment of fees or costs or giving security therefor pursuant to 28 U.S.C. § 1915(a)(1). The plaintiff is further advised that, although he has been granted leave to proceed *in forma pauperis*, the Court may, in its discretion, impose costs of court against him at the conclusion of this lawsuit, as in other cases. *See Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994).

As stated below, this Court has conducted a § 1915(e) review of the claims made in Coleman's Complaint and is recommending his claims be dismissed under 28 U.S.C. § 1915(e).

Therefore, **service upon Defendants should be withheld** pending the District Court's review of the recommendations made in this report. If the District Court declines to adopt the recommendations, then service should be issued at that time upon Defendants.

## II. Section 1915(e)(2) Frivolousness Review

Because Coleman has been granted leave to proceed *in forma pauperis*, the Court is required by standing order to review his Complaint under §1915(e)(2), which provides in relevant part that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). "A complaint filed IFP may be dismissed as frivolous if it lacks an arguable basis in law or fact," *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration or trivial." *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Hicks v. Garner*, 69 F.3d 22, 24 (5th Cir. 1995); *see also Ancar v. SARA Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992) ("A complaint is factually frivolous if the facts alleged rise to the level of the irrational or wholly incredible"). Pleaded facts which are merely improbable or strange are not frivolous. *Denton*, 504 U.S. at 33; *Ancar*, 964 F.2d at 468.

Pro se complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *see also Watts v. Graves*, 720 F.2d 1416, 1419 (5th Cir. 1983). In deciding whether a complaint

states a claim, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

### III.  Background

Carl V. Coleman ("Coleman") is a United States military veteran who resides at the Mary Lee Foundation. Coleman has filed a Complaint (Dkt. No. 1) and a First Amended Complaint (Dkt. No. 4). In this Report and Recommendation, the Court considers the allegations Coleman makes in both documents.

In his eleven page, single spaced Original Complaint entitled "Civil Rights Complaint," Coleman complains of a series of events beginning in May of 2012. Coleman maintains that in 2012 his apartment failed a city housing inspection because of an insecure door lock, but that a HUD inspector falsified a report to state that he had re-inspected the apartment and that the locks were in compliance. Dkt. No. 1 at 3. Coleman argues that in May of 2012 he complained to Licensed Clinical Social Worker ("LCSW"), Jim Hoover, about the falsified HUD report and told him that, despite the report, the locks had never been secured. *Id.* Coleman further asserts that he reiterated his complaints in April of 2012 to two other social workers, Defendants Andrew Miller ("Miller") and Monica Keller ("Keller") and complained about Hoover's failure to take action regarding the falsified reports, and that he showed them the insecure rear door locks. *Id.* Coleman complains that the next year, his apartment failed inspection due to insecure rear door locks. *Id.* He pleads that he also complained to Paula Wood, a LCSW supervisor for the Veteran's Administration. *Id.*

3

Coleman asserts that, because of his complaints to the various social workers about the falsified inspection, in January of 2013, he began receiving dozens of "unwanted, harassing, and disturbing" communications to his e-mail address. *Id.* at 4. Coleman states that he showed the e-mails to LCSW and Defendant Catharine Williams ("Williams"). Coleman pleads that after he showed her the e-mails, Williams falsely informed Coleman's parole officer that he possessed a firearm and complains that she did not have his permission to speak with his parole officer. *Id.* Coleman further asserts that in April of 2014, he complained to Defendant LCSW Sarah Frazier-Caldwell[1] about the harassing communications "creating a ticking time bomb on the Plaintiff." *Id.* Coleman complains that Frazier-Caldwell responded that she did not understand and quickly left his apartment. *Id.* at 5.

Defendant LCSW Sean Morales ("Morales") was assigned as Coleman's caseworker in May of 2014. *Id.* Coleman asserts that Morales falsely reported that he had not been present for two scheduled home visits in May and June of 2014. *Id.* Coleman states that no caseworker contacted him From July 2014 to October 2014, although case managers are supposed to make monthly contacts. Coleman received a letter from Miller stating he would be discharged from the Veteran's Affairs program, through which he receives housing assistance, for non-contact if he did not arrange for a visit before October 24, 2014. *Id.* In order to remain in the Veteran's Administration program, Coleman arranged to meet with Paula Wood at the VA in Austin. *Id.* Coleman asserts when he appeared at the meeting "two armed officers and Wood accosted" him and escorted him to an office on the first floor, where Morales and Miller were waiting. *Id.* at 6.

Coleman asserts that beginning in January of 2014, an unknown agent or agents of the United States began entering his apartment and began tampering with his food including "putting one

---

[1]Coleman also refers to this defendant as Sarah Caldwell-Frazier.

'cheerio' in cornflakes and one 'cheerio' on top of sugar." *Id.*  He complains that the unknown agent of the United States entered his car and tampered with various items and poured orange juice in his car.  *Id.*  He also alleges that "an unknown agent of the United States removed Plaintiff's keyless remote to his 2007 Ford Focus from a sports bag and replaced it a week thereafter."  *Id.* at 6. Coleman asserts that he placed a surveillance camera in his apartment and has posted over 97 videos, phone numbers, and text messages "of unknown agents of the United States" on YouTube. *Id.*

Coleman complains that in retaliation for his complaints, Miller caused him to receive approximately 100 harassing e-mails to various e-mail addresses, and convinced his parole officer, Officer Robert Venegas, or an unknown member of the Texas Board of Pardons and Paroles, to force Coleman to enter into the "Special Needs Offender Program" for the mentally ill.  *Id.* at 7.  He complains that this program requires twice as many monthly contacts, "intrusions by psychologists, social workers and other unwanted contact." *Id.*  He claims to have sustained "a year of tortious emotional distress" for fear of being harmed by various professionals (e.g. doctors, police, and the government).  *Id.* at 8.  Coleman states that the emotional distress consists of "fear of being poisoned, anxiety, restlessness, insomnia, nervousness, anger, depression and lack of trust of professional types, healthcare professionals, law enforcement, big business, corporations and government entities." *Id.*

In his First Amended Complaint, a 27 page document, Coleman adds claims against: Max Courtney ("Courtney") the property manager of the Mary Lee Foundation apartment where he resides; Evelyn Franqui ("Franqui'), the assistant property manager at the Mary Lee Foundation; and an "Unknown Computer Operator" which he defines as including "a computer hacker, but is not limited to, an IT whizz, a computer technician, an unknown federal agent . . . ." Dkt. No.  *Id.* at 4. He reiterates his § 1983 claims and brings new claims pursuant to the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*., and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

In this First Amended Complaint (Dkt. No. 4), Coleman alleges that because of his complaints about the fraudulent inspection of his rear door locks, the various named Defendants placed his name on an "'unknown' federal watch or investigative list" and retaliated against him in various other ways. *Id.* at 3. He includes among the retaliatory acts by federal agents: intimidating e-mails sent in response to Craigslist advertising including one that taunted him with "hello, Mr. Salesman;" repeated harassing phone calls and text messages sent in response to a car he had advertised stating "Why are you selling the car?"; and harassing e-mails from men and women soliciting sex but with phony phone numbers. *Id.* at 7-10. Coleman also alleges that Courtney mailed him two letters on December 11, 2014, terminating the lease on his apartment, but not fully detailing the reasons as required by 24 CFR 247.4. Dkt. No 4 at 7.

Coleman also complains that Unknown Federal Agents sent Austin police officers to his door on several different occasions. *Id.* at 12. He reiterates his claims that Unknown Federal Agents tampered with his food and entered his car "creat[ing]. . . fear of death in the plaintiff by poisoning." *Id.* at 13. Coleman states that he considers these actions threats to kill him by poisoning and that he "fears death if he openly continues to contest or question or report to law enforcement. . . ." *Id.* at 14. Coleman complains that all the Licensed Clinical Social Workers named in his Complaint have informed Courtney and Franqi that he has mental health issues, that he is being investigated, and "is a terrorist or other character of ill repute, " and because of this the landlords are retaliating against him. *Id.*

Coleman complains that in November of 2014, Miller mailed him "a second threatening letter" stating he would have to establish contact withe the Veterans Administration or forfeit the

VASH Program Voucher he currently lives on. *Id.* at 15.  Coleman asserts that on December 10, 2014, Morales or Miller convinced Courtney to terminate his lease when it expired on February 15, 2015. *Id.* at 17.  Coleman maintains that Miller intimidated him by stating that if he wants his VASH voucher, he has to cope with the current "case management," and they will go away only if he gives up the VASH Program Voucher. *Id.* at 18.  Coleman asserts that he has a property interest in the VASH voucher, and that Miller's intimidation of him was an effort to unlawfully take his property interest in the VASH Voucher.

Coleman further asserts an "obstruction of justice" claim premised on his belief that an Unknown Computer Operator has gained control of his computer or YouTube account with the intention of concealing his videos from public view.  It appears Coleman believes these videos are evidence that support his claims against the social workers or other government agents and thus the authorities are concealing the videos so he cannot use them as evidence. *Id.* at 19.  He also asserts that by hiding his videos, the Unknown Computer Operator injured his personal property. *Id.*

Coleman also claims that the Defendants have engaged in a civil conspiracy in violation of RICO.  He asserts that Defendants have retaliated against him by obstructing his videos and attempting to kill him through food tampering.  Coleman alleges the conspiracy was in retaliation for his complaints about the unsecured back door lock.  Lastly, Coleman complains that his oral and video grievances constitute speech protected by the First Amendment and that the Defendants' retaliatory acts in harassing him violate *Bivens*. *Id.* at 23.

### IV. Analysis

Coleman alleges claims against: (1) various Veteran's Administration social workers assigned to his case; (2) the United States; (3) the Texas Board of Pardons and Paroles; (4) unknown agents of the United States; (5) his landlords; and (6) an Unknown Computer Operator.  Coleman

7

claims: (1) violations of his First Amendment rights and retaliation for exercising his First Amendment rights; (2) violation of his Fourteenth Amendment due process rights; (3) violation of the Federal Torts Claims Act; and (4) intentional infliction of emotion distress under Texas law. Dkt. No. 1 at 9.  In his First Amended Complaint he also alleges claims pursuant to RICO and *Bivens*. Because all of these allegations are fanciful, fantastic, and delusional, and have no arguable basis in fact, the court should dismiss them as frivolous under § 1915(e)(2)(B)(i).

## A.        Constitutional Claims

Broadly construed, Coleman appears to be alleging violations of his civil rights and consequently, is attempting to bring his claims under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also America Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).   As an initial matter, Section 1983 provides for an action against state but not federal actors. *Evans v. Ball*, 168 F.3d 856, 863 n. 10 (5th Cir. 1999), overruled on other grounds by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc).  Thus, Coleman's claims against the United States and any of its agents cannot be brought pursuant to Section 1983.  Coleman has failed to identify any state actors in his complaint other than possibly employees of the Texas Board of Pardons and Paroles.

Coleman's only complaint against the Texas Board of Pardons is that it has required him to enter the Special Needs Offender Program.   He requests that the Board of Pardons and Paroles be enjoined from requiring Coleman to participate in this program. "The Texas Board of Pardon and Paroles, a division of the Texas Department of Criminal Justice, is cloaked with Eleventh Amendment immunity." *McGrew v. Texas Bd. of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir.

1995).  Parole officers are entitled to absolute immunity from liability for their conduct in parole decisions and in the exercise of their decision-making powers.  *See Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir.1990).  Pursuant to the Eleventh Amendment, Coleman's § 1983 claim against the Texas Board of Pardons and Paroles for requiring him to participate in the Special Needs Offender Program is barred.  *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995).

Coleman has also identified Max Courtney and Evelyn Franqui, the property managers of his apartment as Defendants.  For a private citizen, such as Courtney and Franqui, to be held liable under § 1983, "the plaintiff must allege and prove that the citizen conspired with or acted in concert with state actors."  *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989).  Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). Coleman has failed to identify an agreement by Courtney or Franqui with a state actor to commit an illegal act.  Accordingly any Section 1983 claim against them fails.

## B.    *Bivens* **Claims**

Coleman also brings claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  A *Bivens* action is analogous to an action for civil rights violations under 42 U.S.C. § 1983. The only difference is that *Bivens* applies to constitutional violations by federal, rather than state officials.  *See Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir.1993). Therefore, to establish a *Bivens* claim, a plaintiff must satisfy the requirements under § 1983.

### 1.    *First Amendment Claims*

Coleman alleges that Defendants violated his First Amendment right to free speech when various Defendants retaliated against him for his complaints about either the improper inspection

9

of his back door or for YouTube videos he published criticizing various government employees or individuals.

A *Bivens* claim of retaliation for the exercise of free speech requires proof of three elements: (1) the plaintiff was engaged in constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of the constitutionally protected conduct.  *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *see also Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004) ("[T]he First Amendment is violated in 'ordinary citizen' cases if the individual engaged in conduct protected by the First Amendment and the government took action against the person because of that protected conduct.").  In this case, Coleman has failed to plead any injury he has suffered as a direct result of the alleged retaliation by an array of social workers and unknown agents of the United States. Additionally, Coleman has failed to identify facts establishing why his caseworkers or unknown agents of the United States government would retaliate against him for his complaints about the inspection of the door lock.  It has been long established that more than a blanket of accusation is necessary to support a § 1983 or *Bivens* claim. *Tower v. Glover*, 467 U.S. 914 (1984).

### 2.   *Due Process*

"A [*Bivens*] action alleging a procedural due process clause violation requires proof of three-elements: (1) state action; (2) a deprivation of a constitutionally-protected liberty or property interest; and (3) constitutionally inadequate process." *Amin v. Estate of Stonebreaker*, 1996 WL 44200, at *2 (E.D. La. Feb. 2, 1996) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Coleman has asserted no allegations that he received insufficient process, a critical element of a due process violation. *See Brown v. Tex. A & M Univ.*, 804 F.2d 327, 333–34 (5th Cir. 1986) (dismissing

plaintiff's due process claim for failure to allege "with particularity what processes he was due"). Accordingly, Coleman's due process claims are properly dismissed.

## C.    Federal Torts Claims Act

Tort claims against the United States and federal actors arise under the Federal Torts Claims Act. *See* 28 U.S.C. § § 1346(b)(1), 2671–2680.  "In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008).  For jurisdictional purposes, Plaintiff must exhaust his administrative remedies under the FTCA before filing suit. *See McNeil v. Unites States*, 508 U.S. 106, 112–13  (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995).  Coleman has failed to allege that he has exhausted his administrative remedies.  Consequently, the Court does not have jurisdiction over Coleman's tort claims against the United States.  Additionally, any FTCA against any federal actors sued in their official capacities are properly dismissed. 28 U.S.C. § 2675(a).

## D.    Rico Claims

A civil RICO claim requires proof of three elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).  Coleman's RICO claims are premised upon his belief that a confederation of Defendants attempted to kill him on four occasions by food tampering, and obstructed justice by commandeering his YouTube account and computer to conceal his videos.  A court may dismiss a claim as factually frivolous only if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.' " *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).  Coleman's RICO claims fall into this category, and the RICO claims should be dismissed as frivolous.

11

**E.      Intentional Infliction of Emotional Distress**

The elements of a claim for intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003).  Coleman has alleged no factual bases for his intentional infliction claim that are not factually frivolous and delusional.  His belief that unknown federal agents are trying to poison him, are unfortunately, delusional and paranoid. Accordingly, Coleman's intentional infliction of emotional distress claim is properly dismissed.

In conclusion, both of Coleman's complaints are properly dismissed as frivolous, as his claims are premised only upon allegations that are clearly fanciful, fantastic and delusional on their face.  In addition, the complaint fails to state a claim on which relief may be granted because the facts alleged are implausible and conclusory.

## V.  Recommendation

In accordance with the preceding discussion, the Court **HEREBY GRANTS** Coleman *in forma pauperis* status (Dkt. No. 1).  Service upon Defendants should be withheld pending the District Court's review of the recommendations made in this report.  If the District Court declines to adopt the recommendations, then service should be issued at that time upon Defendants.

The undersigned **FURTHER RECOMMENDS** that the District Court dismiss Coleman's cause of action pursuant to 28 U.S.C. § 1915(e)(2)(B) and **DENY** Coleman's Request for Appointment of Counsel (Dkt. No. 3).

## VI.  Warning

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See*

*Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 13th day of April, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE